CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 13 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

FRED LEWIS WILSON,          )
                            )
        Petitioner,         )       Case No. 7:09CV00124
                            )
v.                          )
                            )       **MEMORANDUM OPINION**
                            )
VA D.O.C.,                  )       By:  Glen E. Conrad
                            )       United States District Judge
        Respondent.         )

Petitioner Fred Lewis Wilson, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In his petition, Wilson challenges the validity of his confinement pursuant to the February 1, 2007 judgment of the Circuit Court of Botetourt County, Virginia, under which he stands convicted of breaking and entering, destruction of property, and grand larceny, and sentenced to a total of six years imprisonment with three years and six months suspended. (Case No. CR060000-527, -528, and -529.) Respondent filed a motion to dismiss, and Wilson responded,[1] making the matter ripe for decision. Upon review of the record, the court finds that the petition must be dismissed as untimely filed.

## I

### A. Background

Wilson's submissions and allegations offer the following account of the facts leading to his arrest on the charges at issue in this case. Police officers in the City of Roanoke arrested

---

[1] Wilson, with some mailing assistance from his mother, has submitted hundreds of pages of documents to the court in support of this habeas case and his two other habeas cases, Nos. 7:09CV00124 and 7:09CV00127, regarding state court convictions in the City of Salem and Botetourt County, respectively. As some of this documentation is relevant to issues common to all three cases and was likely intended for consideration in all three cases, the court has reviewed all of the documents Wilson has submitted, whether or not Wilson specifically identified them as being relevant any particular case. Most of the submissions are not clearly labeled with exhibit numbers, and the record contains multiple copies of many documents. Therefore, the court makes only limited citations to specific documents in the record.

Wilson on June 30, 2006, while he was in a car, waiting for Walter Hartsook, his codefendant, to finish burglarizing Bill's Auto Shop. Before officers cuffed both men, Wilson ingested "25 hits of LSD and crack cocaine" to prevent authorities from seizing it. At the Roanoke City Police Department, after officers released Wilson on "P.R. Bond," he suffered "a full blown mental breakdown and refused to leave the police station." He told an officer that he was in fear for his life, because Hartsook had been forcing him to participate in several thefts at area stores by threatening to harm him or his dogs. Wilson also allegedly told the officer that Hartsook's "crack and drug dealer Anthony Davis was extorting" money from Wilson. Wilson asked the officer for help and offered to tell authorities about other thefts Hartsook had committed in area towns. Officers promised to help him, had him sign a "legal rights advice form," and proceeded to lock him in a small room, where officers from several jurisdictions questioned him for hours about these offenses with a tape recorder running. (Dkt. 1, Exhibit F.) On July 3, 2006, Wilson gave a taped follow up statement to officers from Botetourt County. (Id., Unnumbered Exhibit.) Thereafter, Roanoke County, the City of Roanoke, the City of Salem, Franklin County, and Botetourt County issued charges of burglary, larceny, and breaking and entering against Wilson, based on his statements to police and subsequent investigation as to physical evidence of break-ins and missing inventory items at each place of business mentioned in Wilson's statement. In turn, the prosecutors in each jurisdiction used Wilson's statements as factual support of Wilson's subsequent guilty pleas in each jurisdiction in late 2006 and early 2007. Attorney Thomas E. Wray was court-appointed to represent Wilson as to all of the charges except those issued in Roanoke City.

In exchange for Wilson's cooperation, the prosecutors dismissed some charges and agreed to the suspension of large portions of the sentences imposed. Records indicate that Wilson's active prison sentences were as follows: City of Salem, nine months; City of Roanoke, six months; Roanoke County, ten months; Botetourt County, two and a half years; and Franklin County, one year and four months. The Circuit Court of Franklin County imposed one year of

- 2 -

the active sentence to run concurrently with the sentence imposed in Botetourt County, but the courts imposed all of Wilson's other sentences to run consecutively with each other for a total active sentence of 63 months or five years and three months. While the record is incomplete as to the outcome of all charges against Wilson's codefendant, Walter Hartsook, apparently he did not cooperate with authorities and was not convicted on all charges.

The parties discussed Wilson's mental health issues during court proceedings. Wray moved for a competency evaluation. On September 9, 2006, Dr. Conrad Daum reported to the General District Court of Botetourt County his medical opinion that Wilson was competent to stand trial. Dr. Daum also reported to Wray his medical opinion that Wilson's mental health problems did not support an argument that he should be found not guilty by reason of legal insanity at the time of the crimes. Wilson continued to have mental health issues at the jail, where he harmed himself, attempted suicide, and was diagnosed as paranoid schizophrenic, among other things.

Wilson now claims that the June 30, 2006 statement was involuntary and thus should not have been used against him. He states that on that day, he was under the duress of having his life threatened and was incapacitated by the effects of the LSD he had ingested. He also alleges that during the day of the statement, officers isolated him, badgered him into confessing, and at one point, stripped him naked so that a female officer could remove his penis piercing, while other officers and inmates taunted and laughed at him. A jail psychiatric report from June 30, 2006, indicates that Wilson reported having hallucinations. Wilson also asserts that he has never seen the entire statement from June 30, 2006, and that he never admitted to active, knowing involvement in many of the offenses to which counsel advised him to plead guilty.

### B. Proceedings and Allegations Concerning Botetourt County Convictions

In the instant petition, Wilson challenges his convictions in the Circuit Court of Botetourt County. Based on Wilson's statements to police, authorities in Botetourt County obtained three criminal indictments against Wilson. On October 31, 2006, Wilson entered guilty pleas to each

- 3 -

of the three charges: destruction of property, breaking and entering in the nighttime with intent to commit larceny, and grand larceny from the Blue Ridge Farm Center. The court sentenced him on February 1, 2007 to a total of six years imprisonment, with three years and six months suspended. Wilson did not appeal.

On March 11, 2008, Wilson filed this § 2254 petition in the Circuit Court of Botetourt County (CL08000-273), alleging the following grounds for relief:

> A. Petitioner's confessions to police were coerced;
>
> B. Counsel was ineffective (1) for failing to show petitioner the charging instruments and his statements to police so that he could make an intelligent decision about pleading guilty; and (2) for failing to take appropriate action regarding petitioner's fragile mental state; and
>
> C. Petitioner could not have committed these crimes because he was in jail.

On July 15, 2008, the circuit court dismissed the petition, finding that claims A and C were procedurally defaulted and waived pursuant to Wilson's valid guilty plea, that Claim B(1) was waived pursuant to the guilty plea, and that Claims B(1) and B(2) were without merit under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52, 58 (1985). The Supreme Court of Virginia refused Wilson's appeal by summary order entered March 30, 2009. (Record No. 082177.)

Wilson filed his § 2254 petition in this court on or about April 5, 2009, alleging the following grounds for relief:[2]

---

[2] Respondent's outline of Wilson's federal claims as set forth in the motion to dismiss differs from the court's outline here. Therefore, the court will refer to respondent's arguments on specific claims by content and not by the numbers used in the motion to dismiss.

Also, Wilson does not include a separate memorandum in support of the habeas claims stated in the petition. He does, however, attach a copy of his petition to the Supreme Court of Virginia during state habeas proceedings, which offers an explication of the claims he now raises in the federal habeas petition. The court will liberally construe this attachment as a memorandum in support of the federal claims.

- 4 -

1.  Detectives fabricated the petitioner's confession to detectives Gary Sprinkle and Stacy Sheppard on June 30, 2006 concerning offenses that occurred in Botetourt County;

2(a).  Counsel provided ineffective assistance by failing to provide petitioner with copies of arrest warrants, summary of the evidence presented by the Commonwealth in support of the plea, petitioner's statements to police, or other information vital to his defense;

2(b) Counsel provided ineffective assistance by failing to move the court for a re-evaluation of petitioner's competency after petitioner attempted suicide in jail, mutilated his nose, and was diagnosed as a paranoid schizophrenic;

2(c) Counsel failed to advise petitioner of his right to appeal after the court also failed to advise him of this right;

2(d) Counsel provided ineffective assistance by encouraging petitioner to enter an unknowing and involuntary guilty plea in light of his mental health problems;

3.  Petitioner entered an involuntary plea of guilty due to mental incompetency; and

4.  Petitioner has evidence demonstrating that he is actually innocent of the charges to which he pleaded guilty.

## II

In the motion to dismiss, respondent argues that Wilson's petition is untimely filed, pursuant to 28 U.S.C. § 2244(d)(1).  In the alternative, respondent argues that the claims are procedurally defaulted and/or reasonably decided by the state habeas court, such that this court must dismiss the petition, pursuant to 28 U.S.C. § 2254(d).  Wilson argues that he can show grounds for equitable tolling, that he can show cause and prejudice or actual innocence to

circumvent his procedural defaults, and that the state court's adjudication of his claims was unreasonable.

## A. Statute of Limitations

<u>Habeas</u> petitions filed under § 2254 are subject to a one-year period of limitation. 28 U.S.C. § 2244(d)(1). Generally, this period begins to run from the date on which the judgment of conviction becomes final. <u>See</u> 28 U.S.C. § 2244(d)(1)(A).[3] A conviction becomes final once the availability of direct review is exhausted. <u>See</u> <u>United States v. Clay</u>, 537 U.S. 522, 524 (2003). However, pursuant to 28 U.S.C. § 2244(d)(2), the one-year filing period is tolled while an inmate's "properly filed application for State post-conviction or other collateral review" is "pending."

### (1) Section 2244(d)(1)(A)

The Circuit Court of Botetourt County entered judgment against Wilson on February 1, 2007, and he then had thirty (30) days to file a notice of appeal to the Court of Appeals of Virginia. <u>See</u> Rule 5A:6(a) of the Rules of the Supreme Court of Virginia. No appeal was filed. Therefore, Wilson's conviction became final for purposes of § 2244(d)(1) on March 3, 2007, when his opportunity to pursue a direct appeal expired. On that same day, the one-year period under § 2244(d)(1)(A) to file a § 2254 petition began to run for Wilson; the filing period expired for him on March 3, 2008.

---

[3] Under § 2244(d), the one-year period of limitation for filing a <u>habeas</u> petition under § 2254 begins to run on the latest of four dates:

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

- 6 -

Wilson filed his state habeas petition in the Circuit Court of Botetourt County on March 11, 2008, after the one-year filing period under § 2244(d)(1)(A) had already expired. Therefore, the pendency of that state petition did not toll the period of limitation pursuant to § 2244(d)(2). See Brown v. Langley, 348 F. Supp. 2d 533, 536 (M.D. N.C. 2004) ("[S]ubsequent motions or petitions cannot revive a period of limitation that has already run.").

Wilson filed his federal habeas petition, at the earliest, on April 5, 2009, beyond the requisite one-year statute of limitations that expired on March 3, 2008.[4] As a result, Wilson's petition is untimely under § 2244(d)(1)(A). Moreover, he does not allege any ground on which his filing period should be calculated under § 2244(d)(1)(B), (C) or (D). Accordingly, unless he demonstrates grounds for equitable tolling, his federal petition must be dismissed as untimely, pursuant to § 2244(d)(1)(A).

### (2) Equitable Tolling

Equitable tolling is available only in "those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (internal quotation marks omitted) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). Allegations of even serious mental illness or physical injuries are not sufficient to warrant invocation of equitable tolling unless petitioner also demonstrates how these conditions constituted an extraordinary circumstance that prevented him from filing a timely petition. United States v. Sosa, 364 F.3d 507, 512-13 (4th Cir. 2004) (citing Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir.1998) (finding equitable tolling based on mental condition to be appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence").

---

[4] For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his petition to prison officials for mailing. Rule 3(d), Rules Governing § 2254 Cases. See also Houston v. Lack, 487 U.S. 266 (1988). It appears that Wilson placed his petition in the prison mailing system on April 5, 2009. Accordingly, the court will assume for purposes of this opinion that it was "filed" on that date.

- 7 -

Among the grounds cited for application of equitable tolling in his case, Wilson asserts that as a result of mental health problems after his arrest, jail and prison authorities maintained him in a "mental isolation cell," at times on suicide watch, allowing him to possess only limited items of personal property. Under these restrictions, he allegedly could not possess any legal materials or even a writing pen in his cell. He alleges that he remained under these property restrictions, to some degree, for the entire year of 2006 and seven and a half months of 2007. He states that because inmates are exempt from the Virginia Freedom of Information Act, he has been unable to obtain documentation about his strip cell status at all of the jails and prisons where he was housed in 2006 and 2007. However, his submissions include documents from Keen Mountain Correctional Center ("KMCC") indicating that he was on suicide watch with no access to writing materials or legal documents for several weeks in the summer of 2007. According to Wilson, he remained subject to property restrictions until September 7, 2007.

If Wilson could prove that he could not possess legal materials or a pen for significant periods during 2006 and 2007, such that equitable tolling of this period was warranted, the court could consider his petition to be timely filed.[5] Sosa, 364 F.3d at 513. The court need not require further fact-finding to resolve Wilson's claims of equitable tolling, however, because Wilson's habeas claims must be dismissed on other grounds.

## B. Procedural Default

Under the doctrine of procedural default, absent cause and actual prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). A state rule is adequate if it is

---

[5] If Wilson were to prove that equitable tolling is warranted until September 7, 2007, his current petition would be timely filed. From September 7, 2006 until March 11, 2008, when Wilson filed his habeas petition in the Circuit Court of Botetourt County to stop the clock, 186 days of the federal filing period elapsed. Pursuant to 28 U.S.C. § 2244(d)(2), the clock remained tolled during the pendency of the state habeas proceedings and began to run again on March 30, 2009, when the Supreme Court of Virginia dismissed Wilson's habeas appeal. Just days later, on or about April 5, 2009, Wilson filed his federal habeas petition, within the one-year filing period.

Case 7:09-cv-00124-GEC-mfu   Document 26   Filed 10/13/09   Page 8 of 20   Pageid#: 782

regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Similarly, if petitioner failed to present a habeas claim to the state court and would now be barred from doing so under an independent and adequate state law ground, his federal version of the habeas claim is barred from review on the merits, absent a showing of cause and actual prejudice, or a showing of actual innocence. Teague v. Lane, 489 U.S. 288, 298 (1989) (holding that non-exhausted claim need not be dismissed as non-exhausted if claim would be defaulted in state court); Bassette v. Thompson, 915 F.2d 932, 935-37 (4th Cir. 1990) (finding that claims not raised previously that would be procedurally barred from review by the Supreme Court of Virginia now are simultaneously exhausted and defaulted).

To show cause to excuse procedural default, petitioner must demonstrate that some force outside himself prevented him bringing the claims earlier. Murray v. Carrier, 477 U.S. 478, 487-88 (1986). Counsel's errors may serve as cause to excuse the procedural default of a specific constitutional claim only if petitioner demonstrates (1) that the errors were so egregious that they violated petitioner's constitutional right to effective assistance of counsel, Strickler v. Green, 527 U.S. 263, 283 (1999), and (2) that the ineffective assistance claim itself is not procedurally defaulted, Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

**(1) Unexhausted and Defaulted Claims**

Wilson did not present the following claims to the Circuit Court of Botetourt County in his state habeas petition, and thus did not properly exhaust them as required under Virginia law: Claim 1 (fabricated confession); Claim 2(b) (counsel's failure to move for re-evaluation of competency); Claim 2(c) (counsel's failure to advise petitioner about right to appeal);[6] and Claim

---

[6] Claim 2(c) also fails on the merits, as the court did advise Wilson during the plea hearing that by entering a guilty plea, he was waiving his right to appeal. (Plea Tr. 7, Oct. 31, 2006.)

3 (involuntary guilty plea).[7] If Wilson raised these claims now to the state courts, they would be barred under Virginia's successive petition rule, Virginia Code Ann. § 8.01-654(B)(2), as Wilson knew the facts necessary to bring these claims earlier. The Fourth Circuit has found this procedural rule to be an independent and adequate state law ground barring federal habeas review. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997). Thus, the respondent argues, federal habeas review of these claims is barred, absent a showing of cause and prejudice or miscarriage of justice. Harris, 489 U.S. at 262.

Wilson does not present any viable reason as to why he could not have raised these claims in the state habeas petition he filed on March 11, 2008. The fact that he is not a lawyer cannot serve as cause for the default as it is not a force or circumstance outside himself. Murray, 477 U.S. at 487-88. As cause for his default of Claim 1 (concerning the "fabricated statement"), Wilson claims that he did not know about the fabrication until he read the plea hearing transcript attached to the June 9, 2008 motion to dismiss.[8] Anything reflected in the transcript, however, was known and "available" to Wilson on the date of the preceding itself, as he was clearly

---

[7] Wilson claims that he presented all of his current claims to the Circuit Court of Botetourt County in his original habeas petition or in his "formal brief" submitted before the court issued its decision. The allegations raised in Claims 1, 2(b), 2(c), and 3 are not identified in the initial state petition as separate claims for relief. To the extent that they may have been mentioned in one of Wilson's many supporting documents submitted with the petition or in the "Formal Briefing" – a rambling document that Wilson submitted in response to the motion to dismiss that opened with "Dear Judge Trumbo," these allegations were not identified or addressed by the state court as new and separate claims added to his petition and must, therefore, be considered unexhausted under § 2254(b). See Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (because Virginia trial court never granted leave for amendment to habeas petition to add disputed claim, claim was not properly raised in state courts for purposes of exhaustion under 28 U.S.C. § 2254). Similarly, to the extent that Wilson may have presented these federal habeas claims to the Supreme Court of Virginia in his habeas appeal, without first presenting them to the Circuit Court, he did not properly exhaust them. See Castille v. Peoples, 489 U.S. 346, 351 (1989) (rejecting argument that submission of new claim to state's highest court on discretionary review constitutes fair presentation for exhaustion purposes under § 2254(b)).

[8] State court records reflect that proceedings in Botetourt County criminal cases had not been transcribed before Wilson filed his habeas petition on March 11, 2008. On May 9, 2008, counsel for the respondent requested transcription of the October 31, 2006 guilty plea hearing and the February 1, 2007 sentencing hearing. These transcripts were filed in the Circuit Court of Botetourt County on May 19, 2008 and subsequently attached as exhibits to the motion to dismiss. Thus, Wilson's accusation that counsel lied to him in February 2008, by informing him that no transcripts existed, is utterly false.

- 10 -

present in the courtroom. Accordingly, the delay in obtaining the transcript cannot serve as cause for default of the claim.

In any event, Claim 1 has no support in the record. During the Commonwealth's proffer of evidence in support of Wilson's guilty plea, the prosecutor referred to a confession Wilson purportedly made on June 30, 2006 at the Roanoke City Jail to Detectives Sprinkle and Sheppard. (Plea Tr. 8-9, Oct. 31, 2006.) Wilson asserts that if the Commonwealth had a June 30, 2006 statement made by Wilson to Sprinkle and Sheppard about the Botetourt County break-in, it is fabricated, because he did not speak to these two officers together at all and spoke to Sprinkle several days later. In support, Wilson submits portions of a transcribed statement that he had made to Sprinkle and another officer, David Dillow, on July 3, 2006, indicating that on June 30, 2006, when Sprinkle and Sheppard came to the jail to talk to Wilson, he was on suicide watch and unable to speak with them. (Dkt. 1, Unnum. Ex.)

While it does appear that Sprinkle first spoke with Wilson sometime after June 30, 2006, probably on July 3, 2006, the prosecutor's verbal misstatements as to the date of Wilson's confessions or as to which officers interviewed him do not prove that anyone fabricated a statement dated June 30, 2006. Neither do these discrepancies prove that the prosecution had not obtained a statement from Wilson describing his participation in the Botetourt offenses to which he pleaded guilty. On the contrary, the record indicates that on June 30, 2006, at the Roanoke City Jail, Wilson told law enforcement officers about offenses in several jurisdictions, including Botetourt County – the reason that Sprinkle and Sheppard came to Roanoke in the first place. (Dkt. 1, Ex. F; Plea Tr. 8-9, Oct. 31, 2006.) The submitted portions of the July 3, 2006 statement also include discussion about the break-in and thefts at the Blue Ridge Farm Center in Botetourt County for which Wilson stands convicted, although the description of the break-in itself is not included in the submitted pages.[9] (Dkt. 1, Unnum. Ex.) As Wilson offers no allegation or

---

[9] The copy of the July 3, 2006 statement that Wilson submitted includes the following passages:
Sprinkle: [After reading Wilson his <u>Miranda</u> rights] With these rights in mind do you want to speak with us?

- 11 -

evidence supporting his bald assertion that someone made or used a fabricated confession in support of his guilty plea, Claim 1 must be dismissed as without merit.

### (2) Actual Innocence

To demonstrate a miscarriage of justice sufficient to excuse his procedural default of Claims 2(b) and 3, Wilson must show actual innocence, specifically, that "it is more likely than not that no reasonable juror would have convicted him" if jurors had received specific, reliable evidence not presented at trial. Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995). In this context, "actual innocence" means factual innocence, not mere legal insufficiency. See Sawyer v. Whitley, 505 U.S. 333, 339, (1992). On the other hand, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."[10] Herrera v. Collins, 506 U.S. 390, 400 (1993). Rather, proof of actual innocence serves as a gateway through which a habeas petitioner must pass to have his otherwise procedurally barred, constitutional claims considered on the merits. Id. at 404.

---

| | |
|---|---|
| Wilson: | Yes I do. |
| Sprinkle: | Okay. Fred this is in reference to a breaking and entering and Grand Larceny that took place on the 30th of uh June. |
| Wilson: | Uh huh. |
| Sprinkle: | It did occur at the Blue Ridge Farm Center in Buchanan, Virginia. |
| Wilson: | All right. |
| Sprinkle: | (inaudible) Botetourt County. |
| Wilson: | Uh huh. |

. . . . [Discussion of other matters]

| | |
|---|---|
| Sprinkle: | On the night, on the 30th tell me about the Blue Ridge Farm Center break-in from beginning to end from the time he came and picked you up 'til after it was done and where the saws and trimmers and stuff went to. |
| Wilson: | Okay. |

(Dkt. 1, Unnum. Ex.)

[10] A habeas petitioner who obtains evidence after trial demonstrating his factual innocence, but unrelated to any constitutional violation in the criminal proceedings against him, is not without recourse. "Clemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." Herrera, 506 U.S. at 411-12. Virginia has such an executive clemency process available to Wilson. See Va. Code Ann. §§ 53.1-229 to -231.

- 12 -

In Claim 4 of this petition, Wilson asserts that he is actually innocent of the crimes charged against him in Botetourt County. Police were first called about the break-in and thefts at the Blue Ridge Farm Center on June 30, 2006, a Friday, after an employee found a broken window and called 911. (Plea Tr. 8-9, Oct. 31, 2006.) The criminal warrants charge that the crimes of burglary, grand larceny, and destruction of property occurred on that date. In his habeas submissions, Wilson asserts that (1) he has never been to the Blue Ridge Farm Center or to Buchanan, the town where the business is located; (2) that he has documented his presence in other locations on June 28, 29, and 30, 2006; and (3) that the only Botetourt County crime he reported to police officers after his June 30, 2006 arrest was a break-in that Hartsook committed on June 27, 2006 after he and Wilson had a disagreement and Wilson refused to participate in the theft.[11]

The record reflects the following information about Wilson's whereabouts during the period in question. The judgment convicting Wilson of grand larceny and one count of statutory burglary in Salem states that these offenses occurred on or about June 24 and 28, 2006. The judgment convicting him of a statutory burglary in Roanoke County states that the offense allegedly occurred on or about June 29, 2006. (Pet. Ex. A-B.) Roanoke City police officers arrested Wilson on the afternoon of June 30, 2006 in connection with an offense in that jurisdiction, and detained him for a period after that in the Roanoke City Jail.[12] Therefore, it is undisputed that Wilson could not have committed the Farm Center break-in on the night of June

---

[11] In his habeas appeal to the Supreme Court of Virginia, Wilson provides his alleged version of events on June 27, 2006. He asked Hartsook to take him to Botetourt so that he could buy some flowers for his girlfriend, who was staying with her parents in that area. Hartsook wanted Wilson to go with him to steal a riding mower, but Wilson refused. Hartsook dropped him off at a grocery store to buy flowers and left. After making his purchase and with no ride, Wilson began walking to the house where his girlfriend was staying. Hartsook picked him up, but insisted that they go directly to Roanoke, as he (Hartsook) had broken into a lawn and garden center and stolen chainsaws, weed trimers, a welding unit, a fishing boat motor, and two firearms. In Roanoke, Hartsook used one of the firearms to rob Wilson. The next day Hartsook broke into Wilson's house and was waiting inside when Wilson got home. Wilson asserts that he had nothing to do with this burglary and that he told police officers this story.

[12] The record does not include a chronology of the facilities in which Wilson was held after his June 30, 2006 arrest.

- 13 -

30, 2006, as Officer Sprinkle suggested in the July 3, 2006 interview with Wilson. The documentation regarding the dates of Wilson's offense conduct in other jurisdictions, however, does not foreclose the possibility that he and Hartsook could have committed the break-in, property destruction, and thefts at the farm center in Botetourt County during the night of June 29 or the early morning hours of June 30, 2006.

Moreover, the evidence to which Wilson points – the judgments from the other courts where he was convicted and his own assertions that he did not participate in breaking into or stealing items from the Botetourt farm center – was evidence known and available to him at the time of trial. Hence, this evidence is not "new" for purposes of the Schlup standard for actual innocence. 513 U.S. at 327. This evidence is also insufficient support for a finding that no reasonable juror would have convicted him of aiding and abetting the Botetourt crimes, in light of other evidence the Commonwealth proffered as potential evidence at trial. See Dunn v. Commonwealth, 665 S.E.2d 868, 871 (Va. App. 2008) ("Every person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor, and is liable as principal.") (citations omitted and emphasis added). Wilson's version of events in Botetourt and his submission of carefully chosen portions of his statements to police on June 30 and July 3, 2006 do not prove that other portions of those statements would bolster his testimony sufficiently to win him acquittal. Thus, the court concludes that Wilson's actual innocence claim fails accordingly under Schlup, 513 U.S. at 327, and he cannot use this procedure to circumvent his procedural default of Claims 2(b), 2(c), and 3. These claims must be dismissed as procedurally barred from federal habeas review. Teague, 489 U.S. at 298.

Claim 4 itself, arguing for habeas relief based on actual innocence, fails for two reasons. First, as stated, Wilson has not shown actual innocence of the Botetourt County crimes. Schlup, 513 U.S. at 327. Second, his actual innocence alone, even if he could prove it, is not a ground on

- 14 -

which this court could grant <u>habeas</u> relief. <u>Herrera</u>, 506 U.S. at 400. The court must grant the motion to dismiss as to Claim 4.

## C. Deference to State Court Adjudications

Respondent admits that Wilson presented Claims 2(a) (counsel's failure to show Wilson key documents) and 2(d) (counsel's recommendation that Wilson plead guilty despite his mental illness) to the state <u>habeas</u> courts, as Claims B(1) and B(2) respectively. The state courts addressed both claims on the merits. Because the Virginia courts adjudicated Wilson's claims on the merits, this court is bound to follow the deferential standard set forth in 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996. This section reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "Where . . . it is the state court's application of governing federal law that is challenged, the decision must be shown to be not only erroneous, but objectively unreasonable." <u>Waddington v. Sarausad</u>, 129 S. Ct. 823, 831 (2009) (internal quotations and citations omitted). When a state appellate court dismisses an appeal with a summary order, the federal <u>habeas</u> court examines the last reasoned decision by a state court on the merits of the claim. <u>See Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-02 (1991). A <u>habeas</u> petitioner is "entitled to an evidentiary hearing only to resolve disputed issues of material fact," and therefore, will not receive a hearing unless he first presents "a colorable claim to relief by showing that the alleged additional facts, if true, would at least arguably compel the granting of the writ." <u>Poyner v. Murray</u>, 964 F.2d 1404, 1422 (4th Cir. 1992).

- 15 -

Under established federal law, to prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. Id. at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). If it is clear that the defendant has not satisfied one prong of the Strickland/Hill test, the court need not inquire whether he has satisfied the other prong. Strickland, 466 U.S. at 697.

**(1) Claim 2(a)**

In this claim, Wilson alleges that counsel failed to give him the Commonwealth's discovery items, a copy of the warrants, an itemized list of the merchandise he was accused of stealing, a transcript of the June 30, 2006 statement Wilson made to police, or an explanation of the statutory elements of the offenses with which he was charged. Without having these items in his possession, Wilson argues, he did not know the specific conduct to which he was pleading guilty or whether it satisfied the elements of the charged offenses. The Circuit Court of Botetourt County dismissed this claim for two reasons: (1) Wilson waived the claim by entering a valid guilty plea and (2) Wilson failed to show either deficient performance or prejudice under

- 16 -

<u>Strickland</u>, 466 U.S. at 687, based on counsel's affidavit statements that he gave, showed, and/or discussed all of these items with Wilson before the Botetourt trial proceedings.

The court agrees that Claim 2(a) fails under <u>Strickland</u>/<u>Hill</u>, because Wilson has not demonstrated that counsel provided deficient representation in this respect. Counsel stated in his state <u>habeas</u> affidavit that he reviewed all discovery material with Wilson, reviewed the statements Wilson had made to police, reviewed the warrants and relevant statutes with him, and discussed with him the options of going to trial or negotiating a plea agreement. He stated that he had no doubt that Wilson understood the elements of the charges against him that the Commonwealth would have had to prove at trial. When the Commonwealth offered a plea agreement, counsel reviewed it with Wilson and advised him that it was a "good deal" in light of the evidence that he had aided and abetted Hartsook in committing the Botetourt County crimes.[13] The state <u>habeas</u> court made a finding of fact from the record that "counsel fully discussed the charges with the petitioner and provided the petitioner with copies of the indictments and statutes." (Cir. Ct. Order 4, July 15, 2008.)

This court must presume the state court's factual finding to be correct, absent a showing of clear and convincing evidence to the contrary. § 2254(e)(1). Wilson fails to make any such showing. His inability to possess the discovery items, warrants, and statements in his strip cell at the jail is not inconsistent with counsel's statement that he gave, showed, and discussed all of these items with Wilson at their meetings about the case. Moreover, during the plea hearing, Wilson affirmed under oath that he understood the elements of the charges against him, that he had discussed them with counsel, that he knew what the Commonwealth had to prove against him, that he had had sufficient time to discuss defenses and plea options with counsel, and that he decided for himself to plead guilty because he was, in fact, guilty of the crimes charged. (Plea Tr. 4-5, Oct. 31, 2006.) Wilson also affirmed under oath that he was satisfied with counsel's

---

[13] The Botetourt County criminal file does not reflect that a written plea agreement was docketed in Wilson's case or discussed at his plea hearing. At the time of sentencing, however, the prosecutor agreed to an active sentence of only two and a half years. (Sent. Tr. 7, Feb. 1, 2007.)

- 17 -

representation. (Id. 7.) As Wilson fails to present evidence overcoming the presumption of correctness as to the state court's finding regarding counsel's actions, he cannot show that counsel's representation was anything less than the standard performance expected of criminal defense attorneys. Claim 2(a) thus fails on the first prong of Strickland. 466 U.S. at 687-88.

Moreover, Wilson has not shown any reasonable probability that a reasonable defendant in his shoes, given the strength of the case against him and the sentencing benefits of the plea agreement, would have rejected the plea agreement in favor of going to trial, based on any of the information counsel allegedly did not give Wilson. Hill, 474 U.S. at 58-59. As the disposition of this claim by the state courts was thus not contrary to or an unreasonable application of federal law or based on an unreasonable determination of facts, the court will grant the motion to dismiss as to Claim 2(a), pursuant to § 2254(d).

### (2) Claim 2(d)

Here, Wilson alleges counsel knew of the psychotropic drugs Wilson was taking and other developments in his mental health picture that occurred after Dr. Daum's competency finding, but allowed Wilson to enter a guilty plea while in this fragile mental state. The Circuit Court of Botetourt County dismissed a similar claim (B(2)), finding that counsel's actions addressing Wilson's mental problems were not deficient under Strickland. The Court based this finding on several factors: Dr. Daum's September 9, 2006 findings that Wilson was both competent to stand trial and not insane at the time of the offenses; counsel's affidavit statement that when he met with Wilson, the defendant seemed to understand everything related to the charges; and the lack of any indication during the plea hearing that Wilson did not understand the proceedings or the questions the court asked him.

To show that he was incompetent to plead guilty, a petitioner must demonstrate that "his mental faculties were so impaired . . . when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." Roach v. Martin, 757 F.2d 1463, 1480 (4th

- 18 -

Cir. 1985) (citing <u>Shaw v. Martin</u>, 733 F.2d 304, 314 (4th Cir. 1984). <u>See also</u> <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960) (<u>per curiam</u>) (stating test for competency to stand trial as "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has rational as well as factual understanding of the proceedings against him.")

The court agrees that in the face of the evidence cited by the state <u>habeas</u> court, Wilson cannot show that counsel performed deficiently with regard to Wilson's mental health. Counsel stated that he spoke with officials at the jail at least once a week about Wilson, so he was no doubt aware of Wilson's odd behavior in the fall of 2006 (such as cutting his wrists and mutilating his nose), his diagnoses with serious mental health problems, and the heavy medications he was taking. However, Wilson offers no evidence to contradict counsel's statements that during his meetings with counsel and in the courtroom, Wilson gave no indication that he did not understand the conduct with which he was charged, the possible sentences he faced, the benefits of the plea agreement, and the rights he waived by pleading guilty. Most importantly, counsel believed that the plea agreement offered Wilson the best chance for the lightest possible penalty for his conduct. In short, because Wilson fails to demonstrate that counsel knew he was not mentally capable of entering a valid guilty plea,[14] <u>Roach</u>, 757 F.2d at 1480, the court cannot find counsel's recommendation that Wilson accept the plea agreement to be deficient representation under <u>Strickland</u>. 466 U.S. at 687. Absent a finding of deficient performance, the court need not address the prejudice prong under <u>Hill</u>. <u>Id.</u> at 697. As the disposition of this claim by the state courts was thus not contrary to or an unreasonable application of federal law or based on an unreasonable determination of facts, the court will grant the motion to dismiss as to Claim 2(d), pursuant to § 2254(d).

---

[14] The court need not decide here whether Wilson's guilty plea was invalid because he was mentally incompetent at the time, because the court has already determined, <u>supra</u>, that this claim (Claim 3 in this petition) is procedurally barred from federal <u>habeas</u> review. In any event, the court does not find sufficient evidence in the record suggesting that Wilson did not understand the legal proceedings against him or the benefits of the plea agreement that he entered in the Circuit Court of Botetourt County.

- 19 -

### III

For the stated reasons, the court concludes that the motion to dismiss must be granted. Claims 1, 2(b), 2(c), and 3 are procedurally barred from federal habeas review, and petitioner fails to establish that he is entitled to habeas relief on the grounds alleged in Claims 2(a), 2(d), and 4. As petitioner fails to allege facts which, if proven, would entitle him to habeas relief, no hearing or further factual development is warranted. Poyner, 964 F.2d at 1422. An appropriate order will issue this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and counsel of record for the respondent.

ENTER: This 13th day of October, 2009.

United States District Judge

- 20 -